UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

)
MARIAH WEBER, Individually and Parent )
of Eve DeCosta, Minor                  )
    Plaintiff,                         )
                                       )
v.                                     )    C.A. No. 1:24-cv-11617-WGY
                                       )
AMAZON.COM SERVICES, LLC,              )
CHENGDUYUANTONGKAI                     )
SHANGMAOYOUXIANGONGSI                  )
    Defendant.                         )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMAZON.COM SERVICES, LLC'S MOTION TO STRIKE OR LIMIT OPINIONS AND EXPERT TESTIMONY OF ZAL PHIROZ, PH.D.**

Plaintiff's expert witness Zal Phiroz should not be permitted to offer expert testimony in this matter. *First*, Dr. Phiroz's opinions related to Amazon's role in the supply chain, and the duties that it owes consumers are impermissible legal opinions. It is the role of this Court—not Dr. Phiroz—to determine whether Amazon is an entity that owed implied warranties or a duty of care to Plaintiff under Massachusetts law. *See Adams v. New England Scaffolding, Inc.*, 2015 WL 9412518, at *9 (D. Mass. Dec. 22, 2015) (explaining that an expert's "conclusions that [defendant] owed [plaintiff] a legal duty . . . overstep the bounds of permissible expert testimony.").

*Second*, Dr. Phiroz lacks the "knowledge, skill, experience, training, or education" on issues of product safety and his unsupported opinions will not "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. Dr. Phiroz is not qualified to offer opinions on topics of product safety when he has no experience or training on such topics, and his expertise is limited to the field of "supply chain practices." Moreover, Dr. Phiroz's opinions related to Amazon's product safety practices are "fundamentally unsupported" by facts or a reliable

1

methodology. *Brown v. Wal–Mart Stores, Inc.*, 402 F.Supp.2d 303, 308–09 (D.Me. 2005). *Finally*, any remaining opinions of Phrioz, including the "variety of pivotal roles" that an entity may play in a supply chain, are not relevant or helpful to the claims and defenses raised in this case and should be excluded. *Cipollone v. Yale Indus. Prods., Inc.*, 202 F.3d 376, 380 (1st Cir. 2000) ("The ultimate purpose of the Daubert inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue.").

## I.    BACKGROUND

This is a simple personal injury action involving a bicycle accident that occurred on July 14, 2023, on the Cape Cod Rail Trial. Plaintiff Mariah Weber was riding her bicycle with her child, Eva DaCosta, in a child bicycle seat installed between the operator seat and the handlebars (the "child bike seat"). Dkt. No. 41 ¶¶ 55–59. Plaintiff alleges that one of Eva's feet became caught in the spokes of the front wheel of the bicycle, causing the accident. *Id.*

Plaintiff sued Amazon, asserting claims for breach of warranty, negligence, and negligent voluntary undertaking. Plaintiff alleges that the bike seat was defective because it did not include foot restraints (*id.*); that Amazon failed to warn (*id.* ¶ 99); and that Amazon voluntarily assumed a duty when it reviewed and annotated a customer review alleging a similar incident prior to Plaintiff's purchase (*id.* ¶¶ 88–99). Plaintiff claims that Amazon should have removed the product for sale, provided additional warnings, or required the product to include foot restraints. *Id.*

Amazon has moved for summary judgment on Plaintiff's claims because Amazon was not the manufacturer, seller, lessor, or supplier under Massachusetts law and cannot be liable for a product sold by the third-party seller, Innolife. *See* Dkt. No. 101 at 3–11. Amazon also did not voluntarily assume a duty of care regarding the bike seat, because Amazon only reviewed and annotated a pre-sale customer review alleging a similar defect, and Amazon's product safety

investigation procedures did not require Amazon to take any action against the product for the feedback received—a fact that Dr. Phiroz agrees with. *Id.* at 11–19. Moreover, even if Amazon's actions did constitute a voluntary undertaking, Plaintiff's claims should be dismissed because she has presented no evidence that she relied upon Amazon's undertaking, or that Amazon's undertaking increased the risk of harm. *Id.* at 18–19.

Plaintiff disclosed Dr. Zal Phiroz as an "established expert and specialist in global supply chain practices." Affidavit of Michael Coghlan ("Coghlan Aff."), Exhibit A ("Phiroz Report") at 1. But Dr. Phiroz has no experience related to reviewing or analyzing product safety or product safety practices.

Dr. Phiroz offers various opinions regarding the role and responsibilities of entities in a supply chain. Additionally, Dr. Phiroz opines on Amazon's roles and responsibilities in the supply chain, including how it sold an unsafe product and provided insufficient product safety practices:

1. "Amazon is assuming the role of retailer/seller within the supply chain." *Id.*

2. "Amazon . . . ha[s] accepted responsibility for ensuring products listed on the Amazon.com platform meet safety and quality standards, and ha[s] overtly publicized this assurance to consumers." *Id.*

3. "[I]t can be assumed that consumers rely on [Amazon's product safety and quality] assurances." *Id.* at 5, 10.

4. "Amazon was aware of the fact that numerous consumers had publicly posted written complaints about the [child bike seat] being dangerous and did not meet safety/quality standards." *Id.* at 2.

5. "Amazon chose not to remove the product from the Amazon.com website, despite [the child bike seat] not being in compliance with the various product safety guidelines and standards." *Id.*

6. Amazon's product safety practices increase the risk of harm by "effectively encourage[ing] the worst possible outcome to occur" because Amazon does "not communicate[] product concerns and product failure to the manufacture, . . . which does not allow corrective action on the part of the manufacturer. *Id.* at 7–10.

3

Plaintiff seeks to introduce Dr. Phiroz's testimony regarding Amazon's role and responsibilities in the supply chain to "educate the jury on the role of a retailor and how Amazon's business as it currently exists reflects that of a retailer or seller despite their arguments to the contrary." *See Aff. Coghlan*, Exhibit B ("Plaintiff's Designation of Expert Witnesses") at 3. Additionally, Plaintiff seeks to introduce Dr. Phiroz's testimony regarding the alleged sale of the "dangerous" bike seat and product safety practices to demonstrate that "Amazon has undertaken to review the safety and compliance of products" and that "Amazon's policies actually promote the sale of unsafe products until the worst possible outcome presents itself." *Id.* at 4. Dr. Phrioz's opinions are inadmissible for either purpose.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 allows a witness who is qualified as an expert by knowledge, skill, experience, or training, or education to testify in the form of an opinion only if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993), the Supreme Court directed trial courts to perform a "gatekeeping" function to ensure that expert testimony conforms to Rule 702's admissibility requirements. "The party seeking to introduce the [expert] evidence has the burden of establishing both its reliability and its relevance." *Lopez-Ramirez v. Toledo-Gonzalez*, 32 F.4th 87, 84 (1st Cir. 2022).

### III.    ARGUMENT

**A. Dr. Phiroz offers inadmissible legal conclusions regarding Amazon's role and responsibilities in the supply chain.**

Plaintiff seeks to introduce the testimony of Dr. Phiroz to establish that Amazon is an entity that owed Plaintiff an implied warranty, duty or care, or voluntarily assumed a duty of care for the bike seat. *See* Exhibit. A at 2; *see also* Exhibit B at 2–3. All those conclusions are questions of law that this Court must determine in Amazon's pending Motion for Summary Judgment or, if the case goes to trial, in providing jury instructions on the law.

It is well-established that "the presence of duty is a legal question to be resolved by the court, not an expert." *Boudreau v. Shaw's Supermarkets, Inc.*, 955 F.3d 225, 237 (1st Cir. 2020) (citing *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997)). To be sure, an "opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. But matters of law are inappropriate topics for expert testimony. *Nieves-Villanueva*, 133 F.3d at 99 (noting that "[a]t least seven circuit courts" have held that expert testimony on "applicable principles of law" is generally impermissible because "purely legal questions" are "exclusively the domain of the judge"); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law."). Numerous precedents hold that Rule 702 "prohibits expert witnesses from offering opinions or legal conclusions on issues that will determine the outcome of a case." *Klaczak v. Consol. Med. Transp. Inc.*, 2005 WL 1564981, at *3 (N.D. Ill. May 26, 2005).

This is especially true when an expert provides an opinion regarding the existence of a duty of care. Allowing an expert to testify whether the defendant "'owed [plaintiff] a legal duty'" would "overstep the bounds of permissible expert testimony by effectively telling the jury how to decide the ultimate legal issue of negligence." *See Adams*, 2015 WL 9412518, at *9 (D. Mass. Dec. 22,

2015) (excluding opinion)). Excluding expert testimony is necessary to ensure that "the existence of a legal duty lies within the sole province of the court." *Mayotte v. U.S. Bank Nat'l Ass'n*, 985 F.3d 1248, 1252 (10th Cir. 2021).

Dr. Phiroz's opinions are impermissible legal conclusions on ultimate issues in this matter. *First*, Dr. Phiroz opines that Amazon "assum[ed] the role of a retailer/seller within the supply chain." Exhibit. A at 2. Plaintiff seeks to introduce the testimony of Dr. Phiroz "to educate the jury on the role of a retailor and how Amazon's business as it currently exists reflects that of a retailer or a seller despite their arguments to the contrary." *See* Exhibit B at 3. Accordingly, Plaintiff seeks to use the testimony to establish that Amazon is an entity that owes consumer implied warranties or a duty of care under M.G.L. c. 106 §§ 2–103, 2–106.

*Second*, Dr. Phiroz opines that Amazon "accepted responsibility for ensuring products listed on the Amazon.com platform meet safety and quality standards." Exhibit A at 2. Plaintiff seeks to introduce this testimony to establish that Amazon "undert[ook] to review the safety and compliance [of the child bike seat]" to establish that Amazon voluntarily assumed a duty of care to "prevent unsafe and non-complaint products from reaching consumer." *See* Exhibit B at 2. Whether Amazon is an entity that owed implied warranties for a product it did not sell, owed a duty of care, or assumed a duty of care under Massachusetts law, is a "purely legal question" that is "exclusively the domain of" this Court. *See Nieves-Villanueva*, 133 F.3d at 99.

One other court has already recognized that Dr. Phiroz's opinions related to Amazon "'acting in the capacity of a retailer/seller'" are not a proper topic for expert opinion. *See Skaggs v. Amazon.com, Inc.*, 2020-1089 (La. App. 1 Cir. 12/15/21), 334 So. 3d 780, 788, *writ denied*, 2022-00068 (La. 3/15/22), 333 So. 3d 1243. Indeed, even though Amazon did not object to Dr. Phiroz's opinion in that matter, the Louisiana Court of Appeals explained, "after examining the

affidavit of Dr. Phiroz, we find that his testimony consisted of legal opinions and conclusions of law. The ultimate issue to be decided herein is whether Amazon is a seller under Louisiana law, which is the province of the trial court." *Id.* Thus, Dr. Phiroz's opinions regarding Amazon's supposed duties and responsibilities are inadmissible, and he should not be permitted to offer opinions on either of these issues.

**B. Dr. Phiroz lacks specialized knowledge or foundation to offer opinions on product safety.**

Dr. Phiroz claims to be an "expert and specialist in global supply chain practices." Exhibit A at 1. He has no knowledge, skill, experience, training, or education in the field of product safety. Coghlan Aff., Exhibit C ("Phiroz CV"). Yet, Dr. Phiroz opines on product-safety issues. He asserts that the child bike seat was "dangerous and did not meet safety/quality standards," that "it can be assumed that consumer rely on" Amazon's product safety measures, and that Amazon's product safety measures increased the risk of harm to Plaintiff. Dr. Phiroz should not be allowed to offer an opinion on any topic relating to product safety because this field is outside the scope of his proclaimed expertise.

The primary concern of the "gatekeeper" function "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Although an expert "'need not have first-hand dealings with the precise type of events at issue,'" the expert must nonetheless be "'qualified . . . by knowledge, skill, experience, training, or education.'" *In re Intuniv Antitrust Litig.*, 2020 WL 5995326, at *19 (D. Mass. Oct. 9, 2020) (quoting *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 80 (1st Cir. 2004)). In other words, an expert's

7

testimony must be excluded when the expert "has no experience or training" on the issue for which they offer an opinion. *Polaino v. Bayer Corp.*, 122 F. Supp. 2d 63, 69 (D. Mass. 2000).

When an expert testifies on the basis of their experience, the expert must "'explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *McGovern ex rel. McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 426 (D. Mass. 2008) (Young, J.) (quoting *Brown*, 402 F.Supp.2d at 308–09). Opinions that are supported only by an expert's "own ipse dixit" and "developed expressly for purposes of testifying" are properly excluded. *Id.* And "if an opinion is fundamentally unsupported, then it offers no expert assistance to the [factfinder]." *Edmonds v. Illinois Central Gulf Railroad Co.*, 910 F.2d 1284, 1287 (5th Cir. 1990).

There is no basis for Dr. Phiroz to give expert testimony on product-safety issues. Dr. Phiroz's CV demonstrates that he has extensive experience in supply chains and logistics but lacks any experience relating to product safety. *See* Exhibit C. Likewise, Dr. Phiroz's report explains that he is an "expert and specialist in global supply chain practices" and has experience in projects relating to "simulated projection and logistics, regression techniques, and clustering in determining the validity of demand projections and identification of key markets." Ex. A at 1. His report offers no explanation of how this experience relates to or informs his product safety opinions. *See id.* Indeed, during his deposition, Dr. Phiroz confirmed that he has no experience or training in making product safety assessment for products, or evaluating an entity's product safety practices:

> Q. "do you have any training specifically in product safety?
>
> A. Yes, in that I have worked on various projects which have focused on various quality issues that have resulted in product recalls, and quality assurance methods, and testing standards that are per protocol for a number of different supply chains and a number a different tiers.

Coghlan Aff., Exhibit D ("Phiroz Depo. Tr.") at 53:15–53:20.

Besides Dr. Phiroz's experience being limited to overseeing *product quality assurance*, he confirmed that he had no direct experience of participating in such quality control testing or protocol:

> Q. You oversaw them, but you didn't conduct them; were you qualified to conduct them?
>
> A. Qualified to take product -- pardon.
>
> Q. Go ahead.
>
> A. I wasn't necessarily -- well, I wasn't necessarily qualified, nor was I asked, nor is my opinion in this case that I was qualified, but I did oversee results of quality testing, and I did understand quality testing requirements and protocol.

*Id.* at 54:8–54:16. Accordingly, Dr. Phiroz has no specialized knowledge regarding product safety, and he has not articulated how his general supply chain expertise related to quality testing is applicable to product safety assessments. *See Polaino*, 122 F. Supp. 2d at 69.

### C. Dr. Phiroz's opinions related to product safety are not based on sufficient facts or data, and are not the product of reliable methodology.

Dr. Phiroz also offers several opinions on product safety, regarding the child bike seat and Amazon's product safety practices. But Dr. Phiroz "fail[s] to connect his opinions to sufficient, reliable data" to support his conclusions. *Gonzalez-Arroyo v. Doctors' Ctr. Hosp. Bayamon, Inc.*, 54 F.4th 7, 15 (1st Cir. 2022). And he has not demonstrated that any of his product safety opinions are based on reliable principles or methods. For these reasons, such testimony, if allowed, would create confusion of the members of the jury to Amazon's detriment.

*First*, Dr. Phiroz opines that the child bike seat was unsafe, but offers no reliable explanation for that conclusion. Although Dr. Phiroz identifies that the child bike seat had three 1-star customer reviews, Dr. Phiroz does not explain how three post-sale customer reviews, only one of which contains similar complaints as Plaintiff, demonstrates that the child bike seat was defective. *See* Exhibit B. at 8–9. Dr. Phiroz also appears to base this opinion on the child bike

seat's noncompliance with an ASTM standard—which was neither approved nor published until after Plaintiff purchased the child bike seat—to support his conclusion that the product was defective. *See id.* at 9–10. But Dr. Phiroz, during his deposition, offered no reasoned explanation, besides references to Amazon's general marketing statements related to product safety, that a product is defective because a voluntary ASTM standard is enacted after the time of sale, or that Amazon had a duty to warn about the need for foot restraints after the ASTM was issued:

> Q. If this standard came into effect after 2022, would it be fair to say that, voluntary or involuntary, this standard would not have been applicable at the time she purchased the bike seat; is that fair?
>
> A. Well, I wouldn't say that would be correct, because if a standard comes into effect after a purchase is made, and the retailer or manufacturer or both are aware of the fact that these guidelines are in place, in keeping with the statements that Amazon made to ensure safety and quality assurance, and with the fact that Amazon has sales records and knows firsthand that there were purchases made of this product, it would be assumed that Amazon could very easily remove the product from the website, which as of June, 2025, they had not done; and contact people who have bought the product before and after this guideline came into effect, which I don't believe that they had done; and issue some sort of a recall if they deemed the risk, as per guidelines, irrespective of when they were launched, made the product dangerous, which I don't believe that they did.
>
> Q. So it's your testimony and your opinion that you believe any time an ASTM standard comes out that renders bought or sold articles noncompliant, it would be incumbent on Amazon to go back through every instance of a covered article and, thereupon, contact the purchaser and say, hey, this is now no longer compliant, you need to give it back to us, and we'll just take care of it for you; is that what you are telling me?
>
> A. No, that's not what I am telling you. I think your question might be somewhat misleading, simply because it doesn't appear that Amazon has taken any sort of corrective action after this standard came into effect, nor did they take any corrective action for purchases that were made prior to the standard . . . Amazon has overtly stated that they are interested in ensuring that products sold on their platform are safe for the consumers who purchase the product. They have made mention of the acknowledgment of a variety of different guidelines; however, if Amazon is aware of a guideline coming up that shows that a product that they sold is unsafe and could cause injury, and they choose not to act, either retroactively or proactive, which in this case seems to be both, they are in contradiction, I would say, in direct contradiction of the statements that they are claiming to abide by in

terms of their concern for consumer safety and their oversight of product safety for products sold on their platform.

…

Q. If Amazon has a number of these seats, let's assume for the sake of this conversation that these seats are subject to this standard; okay? I know some seats have been sold that would now not be compliant with the new standard. Is it your opinion that Amazon would then be required to contact every person that purchased that seat in the past, no matter how far back, and say, hey, there is a new standard that came out, you need to return that seat?

A. Well, depending on the severity, and depending on the risk, and depending on whether or not the guideline and stipulation noted that there was the potential for danger based on the product, it would be in keeping with Amazon's statement to retroactively investigate who purchased the seat and contact them. Or adjust the statement that Amazon had on its website to say, we are interested in making sure that products we sell are safe; however, if a guideline comes up, and you have already bought the product, then you're on your own; right, but they don't do that.

Ex. D. at 58:3–61:10. Thus, Dr. Phiroz's only basis for these opinions is his strained interpretation of Amazon's statements regarding product safety on its website. *See id.*

*Second*, Plaintiff offers no support for the conclusion that Plaintiff relied upon Amazon's product safety practices. While expert opinions "can be based on assumptions and projections," any such "assumptions and projections must be properly grounded in the evidence." *Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 187–88 (D. Mass. 2023) (citation modified). In other words: "An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record." *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1224 (6th Cir. 2025) (citation modified).

Here, Dr. Phiroz simply asserts that it is proper to assume that consumers—including Plaintiff—rely on Amazon's statements on its webpage regarding its product-safety efforts. His report states:

By making numerous claims about keeping customers safe from dangerous products, Amazon is overtly stating that Amazon's policies and procedures proactively protect consumers from dangerous products and goods sold on

> Amazon.com. As these claims are publicized on the consumer facing website (a simple google search for 'Amazon recalls' results in these websites being the top two results), it can be assumed that consumers rely on these assurances.

Exhibit B at 5. The fact that Amazon has customer-facing webpages that explains that Amazon takes various actions related to product safety, does not warrant the conclusion that consumers generally rely upon these statements when purchasing a product. Indeed, Dr. Phiroz does not explain what actions consumers take in reliance of Amazon's product safety practices. *See Brown*, 402 F.Supp.2d at 308–09 (D.Me.2005) (excluding opinion when expert failed to "explain how [their] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"). Nor does Dr. Phiroz identify any support in the record to justify his assumption for purposes of *this* case and *this* Plaintiff's conduct.

*Third*, Dr. Phiroz offers no support for his opinion that Amazon's product safety measures increased the risk of harm to Plaintiff. Although Dr. Phiroz explains that "[i]t is clear that Amazon did not do enough to evaluate the safety of the bike seat" and that "Amazon's policy effectively encourages the worst possible outcome to occur," that opinion is entirely unsupported. *See* Exhibit B. at 8–9. Dr. Phiroz's only basis for that conclusion is that Amazon's failure "to relay important safety information to the manufacturer (even after being aware of consumer injuries) demonstrates a lack of care, a lack of transparency within the supply chain, and stands in the way of ensuring the manufacturer is informed on the safety concerns of the product." *Id.* at 11. But this opinion is directly refuted by the facts established in the case, and those recognized by Dr. Phiroz. Indeed, the very product safety concerns that Dr. Phiroz alleges that Amazon conceals from the manufacturer—which allegedly increase the risk of harm—were publicly available to Innolife on the child bike seat's product detail page. *Id.* at 9. Thus, Dr. Phiroz's opinion that Amazon "st[ood]

12

in the way of ensuring [Innolife was] informed on the safety concerns of the [child bike seat]" is not supported by any facts, and is instead contradicted by facts that cannot be genuinely disputed. *See Gonzalez-Arroyo*, 54 F.4th at 15.

### D. Dr. Phiroz does not offer an admissible opinion that is relevant to any factual dispute.

Even if any of Dr. Phiroz's opinions are otherwise admissible, the opinions are not relevant to any claim or defense in this lawsuit. "The ultimate purpose of the Daubert inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue." *Cipollone*, 202 F.3d at 380. An expert's opinion that "does not relate to any issue in the case is not relevant and ergo, non-helpful." *Daubert*, 509 U.S. at 591; *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985) ("An additional consideration under Rule 702-and another aspect of relevancy-is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the [factfinder] in resolving a factual dispute.").

The Court's resolution of the pending Motion for Summary Judgment will determine whether Amazon is a seller who owed an implied warranty or duty of care to Plaintiff or otherwise assumed a duty of care regarding the child bike seat. *See generally* ECF No. 101. Even if Amazon's Motion is not successful, Dr. Phiroz is not qualified to provide opinions regarding the safety of the child bike seat, or the effectiveness of Amazon's product safety practices. Likewise, Dr. Phiroz does not provide a sufficient basis for his opinions regarding product safety or Plaintiff's alleged reliance of Amazon's product safety measures. Thus, these unqualified and unsupported opinions would not be helpful to the jury because they are based on nothing more than Dr. Phiroz's "own ipse dixit." *See McGovern*, 584 F. Supp. 2d at 426. Further, they would serve only to create confusion of the issues for the jury.

13

## IV.    CONCLUSION

For the reasons set forth above, Amazon respectfully requests that the opinions of Dr. Phiroz be stricken and that he be prohibited from offering any testimony in this matter, and/or appropriately limited.

Respectfully submitted,
AMAZON.COM SERVICES, LLC
By their attorneys,
LEWIS BRISBOIS BISGAARD & SMITH LLP

/s/ *Michael E. Coghlan*_____
Brian C. Newberry(BBO#: 635498)
Michael E. Coghlan(BBO#: 648540)
LEWIS BRISBOIS BISGAARD & SMITH LLP
One Citizens Plaza, Suite 1120
Providence, RI 02903
(401) 406-3318
brian.newberry@lewisbrisbois.com

Dated: October 01, 2025                michael.coghlan@lewisbrisbois.com

## CERTIFICATE OF SERVICE

I, Michael E. Coghlan, hereby certify that on October 01, 2025, a copy of the foregoing document was filed and served electronically upon all registered PACER users connected with this case, and served by electronic mail on anyone unable to accept electronic filing.

/s/ Michael E. Coghlan
_____
Michael E. Coghlan

14